IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TODD COYER, KARL KISNER, LAURYN OVERBEY, LISA SOLOMON, and SONNY PIKE, Individually and as representatives of a class of similarly situated persons, on behalf of the UNIVAR SOLUTIONS 401(K) PLAN f/k/a the UNIVAR USA INC. VALUED INVESTMENT PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVAR SOLUTIONS USA INC., THE BOARD OF DIRECTORS OF UNIVAR SOUTIONS USA INC., THE RETIREMENT PLAN COMMITTEE OF UNIVAR SOLUTIONS USA INC.; and DOES No. 1-20, Whose Names are Currently Unknown,<br><br>Defendants. | Case No.: 1:22-cv-00362<br><br>The Honorable Robert W. Gettleman |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

Plaintiffs' complaint should be dismissed because their conclusory allegations that defendants permitted excessive fees, or that the Fidelity Freedom fund target date suite (the "Active Suite") should not have been offered, do not state claims for any breaches of fiduciary duties under the Employment Retirement Income Security Act of 1974 ("ERISA"). Instead, plaintiffs must plead allegations speaking to flawed decision-making, which they fail to do. *See Divane v. Northwestern Univ.*, 953 F.3d 980, 989–92 (7th Cir. 2020), *vacated and remanded on other grounds sub nom. Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022). In their opposition, plaintiffs rely on inapposite case law and conclusory allegations that fail to remedy the pleading deficiencies that pervade their complaint. The Court should dismiss the complaint in its entirety.

## ARGUMENT

### I. Plaintiffs Fail to State A Claim for Breach of the Duty of Prudence.

The Seventh Circuit has repeatedly held that excessive fee and underperformance allegations, like plaintiffs' here, do not, standing alone, state a claim for breach of the fiduciary duty of prudence. *Divane*, 953 F.3d at 991–92; *Loomis v. Exelon*, 658 F.3d 667, 670–71 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). The Supreme Court's recent decision in *Hughes*, which vacated *Divane* and remanded on other grounds, is consistent with this rule.[1] In *Hughes*, the Supreme Court held that, on a motion to dismiss, courts must "apply[] the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)," and "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. This

---

[1] In *Hughes*, the Supreme Court held that "the Seventh Circuit erred in relying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by respondents." 142 S. Ct. at 742. The question of investor choice is not at issue in this case and was not raised by defendants in their opening motion.

process-oriented approach to the duty of prudence requires plaintiffs to plead allegations "speaking to flawed decision-making." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) (citing *Divane*, 953 F.3d at 988–92; *Loomis*, 658 F.3d at 671–73); *Hughes*, 142 S. Ct. at 742.

The Supreme Court's recent ruling did not reverse or modify the pleading standards that plaintiffs fail to meet here. Thus, *Divane* and the line of Seventh Circuit cases it draws on remain good law regarding the requirement that, in order to state a claim for breach of the duty of prudence under ERISA, a plaintiff must plead facts supporting an inference that the fiduciary's decision-making was flawed. *See Martin*, 2020 WL 3578022, at *4. And while ERISA plaintiffs are not required to plead details to which have they have no access, they still must present allegations that would allow the Court to infer that defendants' process was imprudent. *Id.*. Because plaintiffs' allegations do not support such an inference, their fiduciary breach count must be dismissed.

### A. Plaintiffs' Recordkeeping Fee Allegations Are Insufficient.

Plaintiffs' excessive recordkeeping fee allegations fail to state a claim for breach of the duty of prudence because they do not raise a reasonable inference that defendants engaged in a flawed decision-making process. *See* Dkt. 29, Defendants' Memorandum of Law In Support of Their Motion to Dismiss ("Mot."), at 5–7. The duty of prudence requires a "context specific" inquiry that examines "'the circumstances . . . prevailing' at the time the fiduciary acts." *Hughes*, 142 S. Ct. at 742 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). And to state a claim for breach of fiduciary duty through comparisons to other plan's recordkeeping fees, plaintiffs must provide a like-to-like comparison, and show a disparity so significant that it suggests a deficient decision-making process. *See Divane*, 953 F.3d at 984, 992 (rejecting allegation that recordkeeping fees between $153 and $213 per participant were excessive); *Martin*, 2020 WL 3578022, at *4 (same for fees between $131.55 and $222.43); *Meiners v. Wells Fargo*

2

*& Co.*, 898 F.3d 820, 822–24 (8th Cir. 2018). Plaintiffs' allegations do not plead sufficient detail to make it plausible rather than merely possible that defendants' process was imprudent. *Martin*, 2020 WL 3578022, at *2 (citing *Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544).

In their opposition, plaintiffs assert they have provided a like-to-like comparison, and demonstrated that defendants caused the Univar USA Inc. Valued Investment Plan (the "Plan") to pay excessive recordkeeping fees. *See* Dkt. 31, Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss ("Opp."), at 6–8. Plaintiffs contend they "provide meaningful comparator plans, all with a similar number of participants" for plans ranging from fewer than 5,000 participants to almost double that size, Opp. at 7, while also contending that, regardless, the number of participants and the total assets in a plan do not meaningfully impact fees, Opp. at 7–8. Their opposition only highlights their failure to provide an apples-to-apples comparison. Indeed, if the Court accepted plaintiffs' assertions that the number of participants and total assets do not materially impact fees, Opp. at 7–8, *any* comparison of recordkeeping fees would be a like-to-like comparison. And as explained in defendants' motion, these assertions are contradicted by plaintiffs' allegations, which acknowledge that "recordkeeping" fees vary depending on the services provided to a plan, and on a plan's size, participant composition, and features. Mot. at 6.

Similarly, plaintiffs' bare assertions that their comparators offered "effectively" the same package of recordkeeping and administrative services would nullify the need to show any like-to-like comparison. Opp. at 8. Plaintiffs fail to provide information about the services purportedly "offered by all recordkeepers for one price" to support any inference about defendants' fiduciary process. Compl. ¶¶ 35–36, 56. It is of no consequence that plaintiffs point to both "bigger" and "smaller" plans with lower fees[2] when their premise is flawed from the start—the number of

---

[2] Plaintiffs continue to provide no explanation for their misleading comparison of an "average" recordkeeping and administrative fee per participant between 2016 and 2018 for the Plan, to the "average"

3

participants in a plan is not the sole driver of fees, especially where plaintiffs have failed to allege that their comparators received the same set of services, or to allege which of their comparators employed revenue sharing. Compl. ¶¶ 30, 56–59. Indeed, in their opposition, plaintiffs continue to fail to explain why they have not alleged which of their purported comparators use revenue sharing (while recognizing that revenue sharing is material to fees), and fail to explain why they have conflated recordkeeping and administrative fees. Opp. at 7–8; Mot. at 5–6.

As explained in defendants' motion, plaintiffs' allegations lack the factual detail required by the Seventh Circuit. Their opposition's reliance on *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 332 (3d Cir. 2019), which cites to language from *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014), is unavailing. The lower court in *Tussey* relied on ample evidence in the record of self-dealing and failure to heed warnings of counsel—not conclusory allegations—to conclude that there was a fiduciary breach. *Sweda*, 923 F.3d at 348 (Roth, J., concurring in part). But in their opposition, plaintiffs continue to point only to vague and conclusory recordkeeping fee allegations that do not plausibly allege a breach of fiduciary duty, and thus fail to state a claim for breach of fiduciary duty based on excessive recordkeeping fees. *See Twombly*, 550 U.S. at 555.

### B. Plaintiffs' Investment Management Fee Allegations Are Insufficient.

In their opposition, plaintiffs attempt to reframe their complaint as alleging that the Active Suite's purportedly high management fees *relative to performance* indicate imprudence. Opp. at 8. But their complaint alleges that the Active Suite's purportedly high management fees *alone* indicate imprudence. Compl. ¶¶ 77–78 (describing the Active Suite's costs in comparison to those of the Fidelity Freedom Index Suite (the "Index Suite")). Plaintiffs may not rewrite their complaint allegations in their opposition. Opp. at 8–9. And as explained in defendants' motion,

---

recordkeeping and administrative fee per participant for *only* 2018 for the "comparable plans." Opp. at 8 n.2.

4

"courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. "The existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is an otherwise imprudent choice." *Martin*, 2020 WL 3578022, at *3 (quoting *Davis v. Washington University in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020) (emphasis in original)).

Moreover, although plaintiffs argue that there are substantial similarities between the Active and Index Suites, these similarities are dwarfed by the differences plaintiffs themselves acknowledge. Plaintiffs identify fundamental differences between the strategy and management of the two suites, and recognize that those differences drive differences in fees. For example, plaintiffs allege that the Active Suite "invests predominantly in actively managed Fidelity mutual funds," while the Index Suite "places no assets under active management"; that the Active Suite is "riskier in both its underlying holdings and its asset allocation strategy" (*e.g.*, more allocation, across its glide path, to "riskier international equities," and "higher exposure to classes like emerging market and high yield bonds"); and that actively managed funds "charge higher fees than index funds" with "manager[s] deciding which securities to buy and sell, and in what quantities." Compl. ¶¶ 64, 67–68, 74–75. Given these fundamental differences, plaintiffs' assertion that the two suites "share the same investment philosophy" is implausible. Opp. at 9. Indeed, plaintiffs allege that though the equity glide paths of the Active Suite and Index Suite *appear* nearly identical, the Active Suite "subjects its assets to significantly more risk than the Index [S]uite, through multiple avenues," as "[t]he goal of an active manager is to beat a benchmark—usually a market index or combination of indices—by taking on additional risk." Compl. ¶¶ 67–68. Plaintiffs also allege that the Active Suite "ha[s] discretion to deviate from the glide path allocations by 10 percentage points in either direction," a significant distinction from the Index

5

Suite. *Id.* ¶ 75. Plaintiffs cannot overcome these fundamental differences by calling them "myopic." Opp. at 9.

Similarly, plaintiffs' reliance on various district court opinions is unavailing, particularly when plaintiffs rely on cases from jurisdictions with different standards than the Seventh Circuit. The court in *Jones v. Coca-Cola Consol., Inc.*, for instance, distinguished itself in noting that "[c]ourts in [its] circuit have found a fiduciary breach when [the complaint] alleged that a plan failed to utilize a cheaper investment option that offers identical underlying investments." No. 320CV00654FDWDSC, 2021 WL 1226551, at *5 (W.D.N.C. Mar. 31, 2021). This is not the standard in the Seventh Circuit, and plaintiffs do not assert otherwise. *See Hecker*, 556 F.3d at 586 ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund."); *Loomis*, 658 F.3d at 670. Moreover, *Jones* cites to a case from the Middle District of North Carolina, *Kruger v. Novant Health, Inc.*, where the plaintiffs alleged the comparator investment options also had "identical . . . investment styles." 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015). Plaintiffs cannot plausibly assert that here, given the fundamental differences in investment styles they allege between the Active and Index Suites. And a number of courts have dismissed imprudent investment claims based upon comparisons between actively and passively managed funds. *See Smith v. CommonSpirit Health*, No. CV 20-95-DLB-EBA, 2021 WL 4097052, at *6 (E.D. Ky. Sept. 8, 2021) (collecting cases dismissing imprudence claims based on comparisons between active and passively managed funds) (holding that plaintiff did not plausibly allege imprudence by comparing the Active and Index Suites because they have different aims, different risks, and different potential rewards that cater to different investors). Indeed, plaintiffs do not dispute the "fundamental differences between the two [sets of] funds," which has compelled courts "to deem the two types of funds unsuitable comparators." *Id.*

6

Moreover, other cases on which plaintiffs rely compare the Active Suite's *returns* to those of the Index Suite, which plaintiffs fail to do here. Compl. ¶¶ 77–78. For example, the court in *In re Biogen, Inc. ERISA Litig.* found that the crux of plaintiffs' allegations was that the Active Suite had substantially underperformed the Index Suite, as evidenced by performance comparisons in the complaint. No. 20-CV-11325-DJC, 2021 WL 3116331, at *6 (D. Mass. July 22, 2021); *see also In re Omnicom ERISA Litig.*, No. 20-CV-4141 (CM), 2021 WL 3292487, at *3 (S.D.N.Y. Aug. 2, 2021); *In re MedStar ERISA Litig.*, No. CV RDB-20-1984, 2021 WL 391701, at *3 (D. Md. Feb. 4, 2021).[3] Here, plaintiffs provide no such comparisons; they rely on fee comparisons alone.[4] Their investment management fee allegations should be dismissed accordingly.

### C. Plaintiffs' Investment Performance Allegations Are Insufficient.

Plaintiffs' investment performance allegations are no better, and plaintiffs again attempt in their opposition to mischaracterize their allegations and defendants' motion to overcome the pleading standard. As an initial matter, defendants did not argue that plaintiffs allege all actively managed funds are *per se* imprudent, but that plaintiffs contend the Active Suite is *per se* imprudent. Mot. at 9–10. In their opposition, plaintiffs continue to minimize the extent to which the Active Suite outperformed its competitors during the putative class period, pointing instead to the Active Suite's purported performance compared to other target date funds at the start of the

---

[3] All of these cases rely on *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017), for the proposition that determinations of appropriate benchmarks is not a question properly resolved at the motion to dismiss stage. Similarly, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) cites to *In re: Prime Healthcare ERISA Litig.*, 2021 WL 3076649 (C.D. Cal. July 16, 2021), for a similar proposition that also relies on *Cunningham*. The Court should decline to apply such a standard, given the inherent differences in the Active and Index Suites alleged in plaintiffs' complaint. As described above, the differences far outweigh the similarities.

[4] Contrary to plaintiffs' assertions, defendants did not request that this Court "create a categorical rule regarding the reasonableness of expenses ratios," Opp. at 10 n.5, but instead noted that the fees for the Active Suite were "well within the ranges courts have found reasonable when granting motions to dismiss," Mot. at 8.

7

class period and purported outflows from the Active Suite in 2018. Opp. at 11. But as explained in defendants' motion, sources that plaintiffs themselves cite state that the actively managed funds in the Active Suite outperformed at least 85 percent of their competitors for the first two years of the putative class period, and that the Active Suite was the second most-widely-held target date series by market share, as of December 31, 2018. Mot. at 9–10. "Put simply, if imprudence may be inferred from a fund's underperformance over a given time period, it stands to reason that *outperformance* of the same fund over the same length of time just one year later would weaken, if not negate, such an inference." *Smith*, 2021 WL 4097052, at *8 (emphasis in original). In fact, one could argue that it would have been *imprudent* to replace the Active Suite in the first half of the putative class period, given its performance. "[H]ad [d]efendants done what [p]laintiff[s] say[] would have been prudent and jettisoned the Active Suite in [2016], Plan investors would have lost out on substantial gains." *Id.* Plaintiffs' focus on a few discrete data points does not suggest imprudence.

Notably, plaintiffs fail to respond to defendants' arguments that many of the facts alleged in the complaint suggest that defendants employed a prudent fiduciary process. Plaintiffs, for example, provide no response to defendants' contention that half of the twenty-six actively-managed Fidelity Series Funds in the Active Suite portfolio *met or exceeded* their respective benchmarks over their respective lifetimes. Mot. at 11–12. Instead, plaintiffs cloud the issues by asserting that they are not alleging investment losses are necessarily proof of a fiduciary breach, but are instead pointing to an alleged "thorough pattern" of red flags demonstrating the unsuitability of Active Suite. Opp. at 12. But their allegations fall short of making their claims plausible instead of merely possible, as evidenced by their reliance on comparisons to four of the largest non-Fidelity managers in the target date fund marketplace. Plaintiffs still offer no

explanation, beyond the conclusory assertion that these alleged comparators are the Active Suite's "top competitors," as to why or how the allegedly superior target date funds provide a "sound basis for comparison" for measuring the performance of the Active Suite, Opp. at 12, such as factual allegations to establish that the allegedly superior target date funds had similar objectives or approaches to asset allocation, *Meiners*, 898 F.3d at 822–23. This vagueness is fatal to their claim. Mot. at 11.

Plaintiffs' other attempts to deflect are similarly unavailing. Plaintiffs agree that ERISA does not require a minimum performance history for investment options, but again, have not alleged that the *Active Suite* lacked a five-year performance history when selected for the Plan. Opp. at 12–13. And courts have held that allegations "based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence," given the difficulty of reaching conclusions about a fund's quality based on snapshots of performance over relatively short periods of time. *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020). Contrary to plaintiffs' assertions that they are not suggesting that fiduciaries "reflexively jettison investment options in favor of the prior year's top performers," their allegations that defendants should have replaced the Active Suite at the start of the class period, based on its alleged performance at that point in time, suggest exactly that. Opp. at 11–12.

It is reasonable to modify plan offerings over time "as part of a prudent, whole-portfolio, investment strategy that properly balances risk and reward, as well as short-term and long-term performance." *Birse v. Century Link Inc.*, No. 17-cv-02872, 2019 WL 1292861, at *3 (D. Colo. Mar. 20, 2019) (citing *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt Inc.*, 712 F.3d 705, 716 (2d Cir. 2013)). Here, the Active Suite was replaced in the Plan's investment line-up in 2019, Compl. ¶ 62 n.8, evidencing a *prudent* process.

*See Martin*, 2020 WL 3578022, at *6 (finding that allegations of removing or modifying funds suggest "a prudent process").[5] For these reasons, plaintiffs' investment performance allegations should be dismissed.

## II. Plaintiffs Fail to State A Claim for Ancillary Breaches of Fiduciary Duty.

As with their imprudence claims, plaintiffs fail to respond to many of the arguments in defendants' motion, effectively conceding that their ancillary claims for breaches of fiduciary duty fail to state a claim upon which relief can be granted. *Daugherty v. Univ. of Chicago*, No. 17 C 3736, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017) (dismissing ERISA duty of loyalty claim *with prejudice* where plaintiffs failed to oppose defendants' arguments for dismissing it). Plaintiffs offer no opposition to defendants' argument that their disclosure claim is conclusory and unsupported. Mot. at 12–13. Plaintiffs also offer no opposition to the argument that their claim of noncompliance "with the documents and instruments governing the Plan" is devoid of factual content. *Id*. at 13. And plaintiffs do not object to the points that "[g]eneral allegations about revenue sharing do not state a claim," and that "plaintiffs actually allege a *decrease* in the Plan's recordkeeping and administrative costs over the putative class period." *Id*.

Plaintiffs' response in support of its duty of loyalty claim is limited to a footnote that merely restates plaintiffs' allegations of imprudence and then claims, without elaboration, that the alleged circumstances "enabled Fidelity to collect its inflated compensation from participants." Mot. at 13 n.7. Although plaintiffs assert that "[c]ourts routinely decline to dismiss disloyalty claims where the factual allegations are, as here, tied to the prudence claims," *id*., this assertion continues to ignore that a breach of the duty of loyalty has a different set of elements that plaintiffs

---

[5] Plaintiffs' reliance on *Tibble v. Edison Int'l*, 575 U.S. 523 (2015) is inapposite. *Tibble* provides no guidance on what plaintiffs characterize as "[b]elated replacement" of the Active Suite, as *Tibble* expressed "no view on the scope of [] fiduciary duty" regarding what a duty to monitor investments and remove imprudent ones entails under trust law. *Id.* at 531.

10

must allege to survive a motion to dismiss. *Martin*, 2020 WL 3578022, at *6 (collecting cases where courts require "something more" than merely re-alleging the facts from a duty of prudence claim, such as self-dealing or failure to communicate material information).

The footnote's citations to *Kruger*, 131 F. Supp. 3d 470, and *Morin v. Essentia Health*, No. CV 16-4397 (RHK/LIB), 2017 WL 4876281 (D. Minn. Oct. 27, 2017), do not alter this conclusion. Mot. at 13 n.7. The *Kruger* decision only discusses "imprudence." *See generally Kruger*, 131 F. Supp. 3d 470. Tellingly, the *Kruger* defendants never asked for dismissal of any claims of disloyalty as distinct from claims of imprudence—as defendants do here—giving the court no reason to address that question. The *Morin* decision is likewise unavailing. It ruled on the basis of Eighth Circuit precedent that the duties of loyalty and prudence under ERISA are analyzed together. *Morin*, 2017 WL 4876281, at *1.[6] But the Seventh Circuit does not follow the Eighth Circuit's approach. *See Daugherty*, 2017 WL 4227942, at *7–9 (analyzing duty of loyalty and duty of prudence claims separately); *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 860, 866–67 (N.D. Ill. 2009) (same); *Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 809–815 (N.D. Ill. 2010) (same). Accordingly, plaintiffs' ancillary claims for breaches of fiduciary duty should be dismissed.

### III. Plaintiffs Fail to State A Claim for Breach of the Duty to Monitor or for Knowing Breach of Trust.

Defendants reiterate that Counts II and III should be dismissed as derivative of plaintiffs' breach of fiduciary duty claims, which fail to state a claim. *See* Mot. at 13–14; Section I, *infra*. Plaintiffs still fail to point this Court to allegations of any acts or omissions by defendants that suggest failure to monitor other fiduciaries or knowing acquiescence to other fiduciaries' breaches.

---

[6] It is not clear that the *Morin* court accurately described Eighth Circuit precedent. One of the two cases it cites for the proposition that "[t]he Eighth Circuit [] has not analyzed these two duties distinctly"—*Tussey*, 746 F.3d 327—explicitly ruled on a duty of loyalty claim separately from other fiduciary duty claims. *Id.* at 340.

11

*See* Opp. at 14. Their argument amounts to nothing more than a legal conclusion that defendants must have failed to monitor one another and must have done so knowingly. *See id*. Plaintiffs' citations to *Godfrey v. GreatBanc Tr. Co.*, No. 18 C 7918, 2020 WL 4815906 (N.D. Ill. Aug. 19, 2020), and *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728 (7th Cir. 2006), are inapt, as both cases analyzed the duty to monitor a Plan's investments—not the duty "to monitor and evaluate the performance of [the fiduciary's] appointees," which is the claim plaintiffs seek to bring under Count II. Compl. ¶¶ 107–115. Moreover, the plaintiffs in *Godfrey* survived motions to dismiss their knowing participation claims because they alleged specific conduct on the defendants' part, including a failure to appoint independent members to a board. 2020 WL 4815906, at *11. Plaintiffs make no such allegations of conduct here beyond reciting the legal elements of the claim. Compl. ¶¶ 112, 115.

> **IV. Plaintiffs Lack Standing to Challenge Funds In Which They Did Not Invest and to Seek Prospective Injunctive Relief.**

In arguing that plaintiffs fail to allege constitutional standing to seek all the relief they seek, defendants cited to *Thole v. U.S. Bank N.A.*, a Supreme Court decision holding that ERISA's *statutory* authorization to sue "does not affect the Article III standing analysis." 140 S. Ct. 1615, 1620–21 (2020); Mot. at 14. In their opposition, plaintiffs cite only the portion of an Eighth Circuit decision that discusses *statutory*, rather than constitutional, standing. Opp. at 14–15 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009)). But *Braden* makes clear that "[w]hether [a plaintiff] may pursue claims on behalf of the Plan at all is a question of constitutional standing *which turns on his personal injury*." *Braden*, 588 F.3d at 592 (emphasis added). By contrast, "[w]hether relief may be had for a certain [injury] is a separate question, and its answer turns on the cause of action [the plaintiff] asserts." *Id*. The *Braden* court analyzed these questions separately. *Id*. at 591–94. Although the court found that the plaintiff had Article III standing, it

12

did not address whether the plaintiff could assert claims for funds in which he could have invested, but did not invest. *See id*. at 592 & n.4. And plaintiffs here have provided no allegations of a "casual[] link" between their purported injuries and funds in which they never invested. *Id.*

Plaintiffs attempt to bolster their argument by citing to *Cutrone v. Allstate Corp.*, No. 20 CV 6463, 2021 WL 4439415 (N.D. Ill. Sept. 28, 2021), which declined to follow the approach that defendants propound from *Brown-Davis v. Walgreen Co.*, No. 1:19-CV-05392, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020). Opp. at 15. Neither case is binding precedent for the Court, but to the extent the holdings in *Walgreen* and *Cutrone* would demand different conclusions in this case, defendants urge this court to follow the *Walgreen* decision. While the *Cutrone* decision rejects, without citation, *Walgreen*'s approach based on the judge's "view" of Article III, 2021 WL 4439415, at *5, the *Walgreen* case bolsters its analysis with citation to legal authority, 2020 WL 8921399, at *3. The other three cases plaintiffs cite are also unpersuasive; none addresses the question of whether an ERISA plaintiff has standing to pursue claims that funds in which they were never invested were imprudently managed. *See Peters v. Aetna Inc.*, 2 F.4th 199, 221 (4th Cir. 2021); *Braden*, 588 F.3d at 593; *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

Finally, in opposing defendants' distinct argument that plaintiffs lack standing to pursue injunctive relief as former members of the Plan, plaintiffs baldly assert (in a footnote) that "[t]his standing analysis [from *Braden*] applies equally to claims for injunctive relief." Opp. at 15 n.9. But the *Braden* case never mentions prospective relief, nor does plaintiffs' only other citation, *Cutrone*. *See generally Braden*, 588 F.3d; *Cutrone*, 2021 WL 4439415. And the "sweep more broadly" language on which plaintiffs heavily rely only addresses how far a remedy can extend, not the type of remedy available. *Braden*, 588 F.3d at 592. Plaintiffs' assertion also ignores the

obvious fundamental differences between backwards-looking monetary relief and a forward-looking injunction. *See Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 890 (7th Cir. 2013) ("[A] plaintiff must demonstrate standing for each form of relief sought."). A plaintiff may have standing to pursue damages, but not injunctive relief. *See Daugherty*, 2017 WL 4227942, at *6–7 (thoroughly rejecting the argument that ERISA plaintiffs "need not demonstrate individualized injury to proceed with [Article III standing for] their claims for injunctive relief"). Cases within the Seventh Circuit that have addressed former plan participants' standing for prospective injunctive relief squarely contradict Plaintiffs' assertions. *See, e.g., Briscoe v. Health Care Serv. Corp.*, 337 F.R.D. 158, 162 (N.D. Ill. 2020); *Kenseth v. Dean Health Plan, Inc.*, 784 F. Supp. 2d 1081, 1093 (W.D. Wis. 2011). Plaintiffs here lack standing to pursue injunctive relief.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety.

Dated: May 10, 2022

Respectfully Submitted,

/s/ *Craig C. Martin*

Craig C. Martin (cmartin@willkie.com)
Amanda S. Amert (aamert@willkie.com)
LaRue L. Robinson(lrobinson@willkie.com)
Sara Kim (skim@willkie.com)
Willkie Farr & Gallagher LLP
300 N. LaSalle Street
Chicago, IL 60654-3406
Tel: (312) 728-9000

*Attorneys for Univar Solutions USA Inc., the Board of Directors of Univar Solutions USA Inc., and the Retirement Plan Committee of Univar Solutions USA Inc.*

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure and Rule 5.5 of the Local Rules of the Northern District of Illinois, the undersigned, an attorney of record in this case, hereby certifies that, on May 10, 2022, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: May 10, 2022

*/s/ Craig C. Martin*
Craig C. Martin
Willkie Farr & Gallagher LLP
300 N. LaSalle Street
Chicago, IL 60654-3406
Tel: (312) 728-9000

*Attorney for Univar Solutions USA Inc., the Board of Directors of Univar Solutions USA Inc., and the Retirement Plan Committee of Univar Solutions USA Inc.*